UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN M. ARMEY,

      Petitioner,

v.                           Case No. 8:13-cv-1321-MSS-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## O R D E R

Armey petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for carjacking, false imprisonment, burglary of a conveyance with an assault, two counts of petit theft, and grand theft of a motor vehicle. (Docs. 62, 71, and 85) The Respondent asserts that the petition is untimely, that some of the grounds are procedurally barred, and that the remaining grounds are meritless. (Doc. 88) Armey replies that neither a time bar nor any other procedural bar prevents review of his claims on the merits. (Docs. 85, 89, and 91)  After reviewing all pleadings and the state court record (Docs. 88-2, 88-3, and 88-4), the Court **DISMISSES** the petition as time barred.

## PROCEDURAL HISTORY

Armey exercised his right to a jury trial and presented a necessity defense. Armey testified that, at the time of the crimes, he worked for the police as a confidential informant buying drugs. (Doc. 88-2 at 253–59) Just before the crimes, Armey arranged for the shipment of drugs from Key West. (Doc. 88-2 at 260) Armey rode in a truck with drug traffickers to drop off the drugs. (Doc. 88-2 at 262) During the ride, Armey saw a drug dealer standing in

the middle of the road with two other individuals carrying guns. (Doc. 88-2 at 262–63) Armey had cooperated with police against the drug dealer and knew that the drug dealer intended to kill him. (Doc. 88-2 at 263)

Fearing for his life, Armey hit the driver of the truck with a wrench, threw him out of the car, and drove away in the truck. (Doc. 88-2 at 263) As he drove away, Armey heard gunfire. (Doc. 88-2 at 263) A police officer pulled over Armey, and Armey fled as soon as the police officer exited his police car. (Doc. 88-2 at 263) Armey abandoned the truck and hid for eight days in a hotel room that belonged to an associate. (Doc. 88-2 at 263–64) On the evening of the eighth day, Armey left the room and walked right into the drug dealer who wanted to kill him. (Doc. 88-2 at 264–65)

Armey immediately ran away from the drug dealer to a gas station across the street and jumped into a car with the engine running. (Doc. 88-2 at 265) Armey started to drive away and saw a female sitting in the passenger seat. (Doc. 88-2 at 265) Armey pushed the female out of the car and drove across town until a security device on the car disabled the car. (Doc. 88-2 at 265–66) Armey saw a truck parked at a laundromat nearby with the keys in the ignition. (Doc. 88-2 at 267) He told the owner that he was going to take her truck because a drug dealer was trying to kill him. (Doc. 88-2 at 267) When Armey jumped into the truck, a female opened the passenger door and tried to grab something. (Doc. 88-2 at 267) Armey slapped the female's hand away and drove off. (Doc. 88-2 at 267–69) When police later arrested Armey, he told police that he was a confidential informant, that a drug dealer wanted to kill him, and that he took the trucks to flee from the drug dealer. (Doc. 88-2 at 269)

Police officers testified on behalf of the defense and confirmed that, at the time of the crimes, Armey worked as a confidential informant. (Doc. 88-2 at 233–35, 245–46) A detective

testified that, around that time, the sheriff's office had paid for a hotel room for Armey to facilitate his work as a confidential informant. (Doc. 88-2 at 234) Also, a police officer testified that Armey told her that he was working as a confidential informant, that she confirmed with a detective that Armey was working as a confidential informant, had provided assistance with two drug transactions, and was providing assistance with a third transaction, and that Armey genuinely appeared afraid for his life. (Doc. 88-2 at 247–50)

The jury heard this evidence, received instructions from the trial judge on the necessity defense, and found Armey guilty of carjacking, false imprisonment (a lesser included offense), and burglary of a conveyance for the car stolen from the gas station. (Doc. 88-2 at 345–48, 367–68) The jury also found Armey guilty of two counts of petit theft (one count, a lesser included offense) and grand theft of a motor vehicle (a lesser included offense) for the truck stolen from the laundromat. (Doc. 88-2 at 368–69)[1] The trial court sentenced Armey to thirty years for the carjacking, a concurrent five years for the false imprisonment, a concurrent life sentence for the burglary, a concurrent five years for the grand theft, and time served for the two counts of petit theft. (Doc. 88-2 at 385–95)

Armey appealed his convictions and sentences, and the state appellate court affirmed in a decision without a written opinion. (Doc. 88-2 at 433) The post-conviction court denied Armey relief after an evidentiary hearing (Doc. 88-2 at 775–82), and the state appellate court affirmed in a decision without a written opinion. (Doc. 88-3 at 73) Armey filed numerous successive post-conviction motions raising claims based on newly discovered evidence, the

---

[1] The jury found Armey not guilty of attempted sexual battery on the passenger of the car stolen from the gas station and not guilty of attempted kidnapping of the female who tried to stop Armey from stealing the truck from the laundromat. (Doc. 88-2 at 367–69)

post-conviction court dismissed the motions as untimely and procedurally barred, and the state appellate court affirmed. Armey's federal petition follows.

In his amended petition (Doc. 62), Armey raises the following claims:

### Claims Based on Exculpatory Statement

(1)     The prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963) by not disclosing to the defense a written and audio-recorded exculpatory statement by Armey to police that "[h]e took the vehicles because the dopeman was shooting at him in the parking lot." (Ground One, Ground Five, and sub-claim A, Ground Six);

(2)     The prosecutor violated *Giglio v. United States*, 405 U.S. 150 (1972) by informing the jury during trial that Armey never told police that he took the cars from the victims to escape the "dopeman's" gunfire (sub-claim A, Ground Two);

(3)     Trial counsel was ineffective for not demanding from the prosecutor before trial the police report with Armey's exculpatory statement to police that he took the cars from the victims to escape the "dopeman's" gunfire (sub-claim A, Ground Three);

### Claims Based on 911 Call

(4)     The prosecutor violated *Brady* by not disclosing to the defense evidence that proved that Armey called 911 for help and that a manager at the hotel also called 911 to report that she was helping Armey escape from drug dealers who were looking for him (sub-claim B, Ground Six);

(5)     The prosecutor violated *Giglio* by informing the jury during trial that Armey never called police for help (sub-claim B, Ground Two);

(6)     Trial counsel was ineffective for not demanding from the prosecutor before trial a recording of the 911 call by Armey asking for help (sub-claim B, Ground Three) and for not requesting from the custodian of records at the sheriff's office evidence that proved that Armey called 911 asking for help (Ground Four);

**Remaining Claims**

(7)　　The prosecutor violated *Brady* by not disclosing evidence that proved that Armey worked as a confidential informant for police at the time of the crimes (Ground Seven);

(8)　　Trial counsel and post-conviction counsel were ineffective for not investigating an insanity defense because Armey suffered from narcolepsy and hallucinations at the time of the offenses (Ground Eight).

Armey contends that he discovered evidence after trial which supported the above claims. He asserts that his Section 2254 petition is timely because the limitation period began to run (1) "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States [was] removed," and (2) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(B), (d)(1)(D). (Docs. 62 at 27–29, 71 at 9–11, 85 at 2–4, 89 at 10–12) He further asserts that the limitation period should equitably toll (Doc. 62 at 29) and that actual innocence excuses any time bar. (Doc. 89 at 12–13)

**ANALYSIS**

Because Armey filed his Section 2254 petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA applies. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). A one-year statute of limitation applies to a Section 2254 petition. 28 U.S.C. § 2244(d)(1). Under Section 2244(d)(1), the limitation period runs from the latest of the following dates:

(A)　　the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The limitation period tolls when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

### Section 2244(d)(1)(A) — Date when the judgment became final

The Respondent asserts that the petition is untimely under Section 2244(d)(1)(A), which starts the limitation period "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." (Doc. 88 at 29) On May 9, 2001, the state appellate court affirmed Armey's convictions and sentences in a decision without a written opinion. (Doc. 88-2 at 433) The state supreme court lacked jurisdiction to review the unelaborated decision. *Jenkins v. State*, 385 So. 2d 1356, 1360 (Fla. 1980) (citing art. V, §3(b)(3), Fla. Const.). Because Armey faced a clear constitutional bar to higher state court review, he could only have sought further review in the U.S. Supreme Court. *Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006). Armey did not seek further review, and the time to seek that review expired ninety days later — August 8, 2001. Sup.

Ct. R. 13.1. The next day, the federal limitation period started to run. Fed. R. Civ. P. 6(a)(1)(A). *Bates v. Sec'y, Dep't Corrs.*, 964 F.3d 1326, 1329 (11th Cir. 2020).

On January 10, 2002, Armey certified that he mailed a motion for post-conviction relief to the state court clerk. (Doc. 88-2 at 437–53)[2] At that time, 160 days had run on the limitation period. The post-conviction court denied the motion after an evidentiary hearing (Doc. 88-2 at 775–82), Armey appealed (Doc. 88-2 at 784), and the state appellate court affirmed. (Doc. 88-3 at 73) The limitation period tolled until mandate on appeal issued — May 17, 2004. (Doc. 88-3 at 75) *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000). The limitation period started to run the next day, continued to run for 205 days, and expired on December 9, 2004. More than eight years later, on May 6, 2013, Armey certified that he placed his Section 2254 petition in the hands of prison officials for mailing. (Doc. 1 at 15) Consequently, the petition is untimely.

### Successive Post-Conviction Motion Filed on September 11, 2003

On September 11, 2003, before the limitation period expired, Armey certified that he mailed a successive motion for post-conviction relief to the state court clerk. (Doc. 88-3 at 77–83) The post-conviction court dismissed the motion without prejudice because of a deficient oath (Doc. 88-3 at 106–07), Armey appealed (Doc. 88-3 at 109), and the state appellate court reversed. (Doc. 88-3 at 151–52) On remand, the post-conviction reviewed three newly discovered evidence claims raised in the successive motion, addressed the merits of the claims, determined that the claims were not based on newly discovered

---

[2] Armey was not required to certify that he placed the motion in the hands of prison officials for mailing to receive benefit of the prison mailbox rule. *Griffin v. Sistuenck*, 816 So. 2d 600, 602 (Fla. 2002) ("[A]n inmate's document *is* mailed when it is placed in the hands of prison officials for mailing because the inmate has no other way to send documents to the courts.") (italics in original).

evidence, denied the first claim as procedurally barred, and denied the second and third claims as successive and procedurally barred. (Doc. 88-3 at 158–61)[3]

The Respondent correctly asserts that the motion did not toll the limitation period because the motion was untimely and therefore not "properly filed" under Section 2244(d)(2). (Doc. 88 at 29–31) Even though the state court did not explicitly dismiss the motion as untimely, "the state court doesn't even have to make a timeliness ruling *at all* before a federal court can find that it was untimely and not 'properly filed' for Section 2244(d)(2) purposes." *Jones v. Sec'y, Fla. Dep't Corrs.*, 906 F.3d 1339, 1346 (11th Cir. 2018) (citing *Evans v. Chavis*, 546 U.S. 189 (2006)) (italics in original). "When a state court has not addressed the timeliness of an application for collateral relief, the federal court 'must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness.'" *Jones*, 906 F.3d at 1348 (quoting *Walton v. Sec'y, Fla. Dep't Corrs.*, 661 F.3d 1308, 1312 (11th Cir. 2011)).

A defendant must file a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, no later than two years after the judgment and sentence become final unless the following exceptions under subsection (b) of the rule apply:

> (1)   The facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, and the claim is made within two years of the time the new facts were or could have been discovered with the exercise of due diligence;

> (2)   The fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively, and the claim is made

---

[3] *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").

within two years of the date of the mandate of the decision announcing the retroactivity; or

(3)     The defendant retained counsel to timely file a 3.850 motion and counsel, through neglect, failed to file the motion. A claim based on this exception shall not be filed more than two years after the expiration of the time for filing a motion for postconviction relief.

Under state law, the judgment and sentence become final when mandate issues on direct appeal. *Rogers v. State*, 146 So. 3d 1263, 1264 (Fla. 2d DCA 2014). Mandate issued in Armey's direct appeal on June 6, 2001. (Doc. 88-2 at 436) Because Armey filed the successive post-conviction motion on September 11, 2003 (Doc. 88-3 at 83), the post-conviction motion was not timely filed unless an exception under Rule 3.850(b) applied.

In the first ground of his post-conviction motion, Armey asserted that police violated his right to counsel by interrogating him without counsel present after he filed a written notice of invocation of rights in his criminal case. (Doc. 88-3 at 79–80) To support the ground, Armey presented a notice of invocation of constitutional rights form signed by Armey and filed by trial counsel with the state court clerk on August 24, 1999. (Doc. 88-3 at 85) The jury found Armey guilty on May 26, 2000. (Doc. 88-2 at 367–69) The post-conviction court determined that the claim was not based on newly discovered evidence (Doc. 88-3 at 159):

Defendant claims that the sheriff's office and members thereof participated in custodial interrogations of Defendant after being served notice from the defendant not to do so without written consent and the presence of an attorney. Defendant claims that after being presented with a copy of Defendant's invocation of rights on August 18, 1999, the sheriff's office or members thereof participated in custodial interrogations of Defendant in direct violation of Defendant['s] invocation. After reviewing [the ground], the court file, and the record, the Court finds that Defendant was aware of the custodial interrogations as he was the individual being interrogated. Consequently, this Court

> finds that any basis to contest the alleged illegality of those custodial interrogations does not meet the newly discovered evidence exception and is procedurally barred. As such, no relief is warranted [ ].

The state court's finding that the claim was not based on newly discovered evidence is presumed correct, and Armey fails to come forward with clear and convincing evidence to rebut the finding. 28 U.S.C. § 2254(e)(1). Because Armey knew that he had signed the notice before trial and could have discovered the notice filed with the state court clerk long before he filed his post-conviction motion, the exception under Rule 3.850(b)(2) for a claim based on newly discovered evidence did not apply. *Ramirez v. State*, 319 So. 3d 85, 86 (Fla. 3d DCA 2021).

In the second ground of his post-conviction motion, Armey asserted that the prosecutor presented false testimony by a detective at trial concerning Armey's work as a confidential informant. (Doc. 88-3 at 80) To support this ground, Armey presented documents, dated August of 1999, which showed that he worked as a confidential informant for the sheriff's office and received money and a hotel room for that work. (Doc. 88-3 at 94–96) In the third ground, Armey asserted that newly discovered evidence proved that he was legally insane at the time of the crimes. (Doc. 88-3 at 81) To support this ground, Armey presented a psychiatric evaluation, dated July 15, 1993, by a doctor who worked for the Iowa Department of Corrections and treated Armey while he was incarcerated. (Doc. 88-3 at 98–104)

The post-conviction court determined that the second and third grounds were not based on newly discovered evidence (Doc. 88-3 at 160) (state court record citations omitted):

> After reviewing [the grounds], the court file, and the record, the Court finds that [the] exhibits [ ] attached to Defendant's present Motion, which Defendant cites to in support of his

> claims, are dated prior to Defendant's May 26, 2002[4] trial. Therefore, this Court finds that said evidence was in existence at the time of Defendant's May 26, 2002 trial and could have been ascertained by the exercise of due diligence. Consequently, this Court finds that [the grounds] do not meet the newly discovered evidence exception and are procedurally barred.

Because Armey could have discovered the facts supporting the claims with the exercise of due diligence long before he filed his post-conviction motion, the exception under Rule 3.850(b)(2) for a claim based on newly discovered evidence did not apply. *Lycans v. State*, 322 So. 3d 768, 770 (Fla. 1st DCA 2021).

Armey appealed the post-conviction court's order denying the successive motion (Doc. 88-3 at 163), and the state appellate court affirmed. (Doc. 88-3 at 196) Because none of the exceptions under Rule 3.850(b) to the two-year time limit on a post-conviction motion applied to the claims raised in Armey's successive post-conviction motion, the post-conviction motion was untimely and did not toll the limitation period. *Jones*, 906 F.3d at 1350.

### Additional Successive Post-Conviction Motions

On April 1, 2008 (Doc. 88-3 at 200–14), January 10, 2011 (Doc. 88-3 at 483–502), April 4, 2016 (Doc. 88-4 at 6–49), and January 13, 2017 (Doc. 88-4 at 278–89), Armey filed successive post-conviction motions. Also, on August 11, 2013 (Doc. 88-3 at 655–72), Armey filed a motion to correct his sentence. Even if Armey properly filed the motions, Armey filed the motions after the limitation period expired on December 9, 2004. The motions did

---

[4] The post-conviction court mistakenly determined that the trial occurred in 2002. The jury found Armey guilty in 2000. (Doc. 88-2 at 367–69) However, the documents proving Armey's work as a confidential informant and the psychiatric evaluation were discoverable with the exercise of due diligence, even in 2000.

not toll the limitation period because "once a deadline has expired, there is nothing left to toll." *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) (citing *Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003)).

Armey asserts that Florida's two-year time limit for a post-conviction motion applies to his federal petition. (Doc. 62 at 27) *Tinker v. Moore*, 255 F.3d 1331, 1334–35 (11th Cir. 2001), rejected this argument:

> By virtue of statute, Tinker is provided both a state and federal forum in which to seek post-conviction relief. Despite his argument to the contrary, he need not forego his state remedy entirely in order to avail himself of the federal remedy. However, he must exercise it within one year of the date his judgment became final and do so in a manner that leaves him sufficient time to timely file his federal petition.

Armey further asserts that his claims in his federal petition are timely because the claims relate back to claims in his state post-conviction motion, which he filed before the limitation period expired.[5] (Docs. 71 at 9 and 89 at 5–6, 10) Under Rule 15(c)(1)(B), Federal Rules of Civil Procedure, "[a]n amendment to a pleading relates back to the date of the original pleading when: the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." However, "[t]he 'original pleading' to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding." *Mayle v. Felix*, 545 U.S. 644, 655 (2005). "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle*, 545 U.S. at 664. A claim in a federal petition does not "relate back" to a claim in a state court motion. The

---

[5] Armey identifies claims in his state post-conviction motion that "aris[e] out of the same conduct, transaction, or occurrence" as the claims in his federal petition. (Doc. 71 at 12–38)

one-year statute of limitation applies to a federal petition — not a state court motion. 28 U.S.C. § 2244(d)(1). Even if Armey raised related claims in a state court motion before the limitation period expired, his federal petition filed after the limitation period expired is still untimely.

Consequently, Armey's petition is untimely.

### Subsection (d)(1)(B) and subsection (d)(1)(D) of Section 2244 — Impediment to Filing Caused by State Action and Discovery of Factual Predicate of the Claim

Armey asserts that the prosecutor impeded his timely filing of the claims in Ground One through Ground Seven by refusing to disclose exculpatory evidence on which the claims are based, in violation of *Brady*. (Docs. 62 and 28–29 and 85 at 2–3) He further contends that he timely filed the claims after he discovered the exculpatory evidence on which the claims are based. (Doc. 85 at 2–3) Lastly, he contends that Section 119.07, Florida Statutes, impeded him from timely filing the claims by barring him from relying on evidence obtained from a public records request to raise the claims. (Doc. 85 at 3)

Section 2244(d)(1)(B) states that the limitation period may start to run "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States [was] removed, if the applicant was prevented from filing by such state action." "[T]he limitation period does not begin until after the state impediment is removed." *Wyzykowski v. Dep't Corrs.*, 226 F.3d 1213, 1216 (11th Cir. 2000).

Also, Section 2244(d)(1)(D) states that the limitation period may start to run "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." "The 'factual predicate' also has been referenced as the underlying 'vital facts' of a petitioner's claim." *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1155 (11th Cir. 2014) (citation omitted). "'Conclusions drawn from

preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim.'" *Id.* (citation omitted). "Due diligence means the petitioner 'must show some good reason why he or she was unable to discover the facts' at an earlier date." *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008), *vacated on other grounds*, 561 U.S. 1001 (2010) (citation omitted). "[T]he inquiry focuses on 'whether a reasonable investigation . . . would have uncovered the facts the applicant alleges are newly discovered.'" *Id.* (citation omitted).

Both subsection (d)(1)(B) and subsection (d)(1)(D) require "claim-by-claim consideration" by the district court. *Zack v. Tucker*, 704 F.3d 917, 923 (11th Cir. 2013) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005)).

## Claims Based on Exculpatory Statement

Armey raises several claims based on evidence that he contends proves that he told police that "[h]e took the vehicles because the dopeman was shooting at him in the parking lot." In Ground One, Ground Five, and sub-claim A of Ground Six, Armey asserts that the prosecutor violated *Brady* by not disclosing to the defense a written and audio-recorded statement by Armey to police that "[h]e took the vehicles because the dopeman was shooting at him in the parking lot." (Doc. 62 at 7–8, 15–18) In sub-claim A of Ground Two, he asserts that the prosecutor violated *Giglio* by informing the jury during trial that Armey never told police that he took the cars from the victims to escape the "dopeman's" gunfire. (Doc. 62 at 10–11) Lastly, in sub-claim A of Ground Three, he asserts that trial counsel was ineffective for not demanding from the prosecutor before trial the police report which contained Armey's exculpatory statement. (Doc. 62 at 12–13)

Armey contends that he first learned about the exculpatory statement on January 28, 2008, when the custodian of records for the police department responded to his public

records request and notified him that a police report contained the statement. (Doc. 62 at 8, 16, 18) He further contends, on February 6, 2008, the police department disclosed to him the police report. (Doc. 62 at 8)

A prosecutor's violation of *Brady* may both impede a habeas petitioner from timely raising a claim in a federal petition and delay the date when the limitation period begins to run under Section 2244(d)(1)(B) until the petitioner receives the undisclosed evidence. *Brown v. Sec'y, Dep't Corrs.*, 750 F. App'x 915, 927–28 (11th Cir. 2018)[6]. *See also Green v. Cain*, 254 F.3d 71 (5th Cir. 2001). However, even if Armey first received the police report containing his exculpatory statement after trial, the prosecutor's failure to disclose to Armey before trial his own statement to police does not violate *Brady*. *Boyd v. Comm'r, Ala. Dep't Corrs.*, 697 F.3d 1320, 1335 (11th Cir. 2012) ("As for the first one — that Boyd's own statement to police was suppressed — this is not *Brady* material. Boyd was obviously present during this questioning and thus aware of anything he may have said.").

In his sworn Section 2254 petition, Armey confirms that he knew about the exculpatory statement and told trial counsel about the statement before trial: "Prior to trial, [Armey] informed defense counsel [ ] that a written statement was given that contained a statement that [Armey] 'had to take the vehicles because the dopeman was shooting at him in the parking lot.'" (Doc. 62 at 12)

Because Armey could not demonstrate that the prosecutor violated *Brady* by not disclosing his own statement to police and that the *Brady* violation impeded him from timely raising the above claims in his federal petition, the limitation period did not begin to run

---

[6] 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

when Armey received the police report. *Johnson v. Fla. Dep't Corrs.*, 513 F.3d 1328, 1331–32 (11th Cir. 2008) ("To delay the running of the statute of limitations, § 2244(d)(1)(B) requires state action that both '**violat[ed] . . . the Constitution or laws of the United States**' and 'prevented [the prisoner] from filing' his federal petition.") (bolding added).

For the same reason, Section 2244(d)(1)(D) does not provide Armey relief. Under that subsection, "'[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, *not when the prisoner recognizes their legal significance.*'" *Cole*, 768 F.3d at 1157 (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)) (italics in original). In his Section 2254 petition, Armey acknowledges that he knew about his exculpatory statement to police before trial and told trial counsel about it. (Doc. 62 at 12) Consequently, under Section 2244(d)(1)(D), the limitation period did not begin to run when Armey received the police report. *See Nordelo v. Sec'y, Fla. Dep't Corrs.*, 635 F. App'x 636, 639–40 (11th Cir. 2015).

Lastly, even if the limitation period began to run on February 6, 2008, when Armey received the report, his petition is still untimely. On April 1, 2008, Armey filed a motion for post-conviction relief. (Doc. 88-3 at 200–14) After the post-conviction court dismissed the motion because the motion was not properly sworn (Doc. 88-3 at 338–39), Armey filed a properly sworn amended motion. (Doc. 88-3 at 346–74) On August 17, 2010, the post-conviction court denied the amended motion as untimely (Doc. 88-3 at 472–73):

> After reviewing the above grounds, the Court finds that Defendant bases his claims on newly discovered evidence. The Court notes that "[n]ewly discovered evidence is evidence that was unknown at the time of trial and could not have been discovered by the use of due diligence." *Murphy v. State*, 24 So. 3d 1220 (Fla. 2d DCA 2009). After reviewing Defendant's

> Amended Petition, the Court finds that Defendant admits in the petition that he knew of the evidence, (the written statements, taped statements, documents, and records), prior to trial. Because Defendant knew of the evidence prior to trial, the Court finds that Defendant's claim fails to satisfy the first element of a newly discovered evidence claim, which requires the newly discovered evidence to have been unknown at the time of the trial. As such, the Court finds that the evidence is not newly discovered evidence. Therefore, grounds one through seven must be denied as untimely.

The properly sworn amended motion related back to the initially filed motion that was not properly sworn for limitation purposes. *Hall v. Sec'y, Dep't Corrs.*, 921 F.3d 983, 990 (11th Cir. 2019). However, because the post-conviction court denied the amended motion as untimely, the amended motion was not "properly filed" under Section 2244(d)(2) and did not toll the limitation period. *Allen v. Siebert*, 552 U.S. 3, 7 (2007) ("We therefore reiterate now what we held in *Pace* : 'When a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).'") (quoting *Pace*, 544 U.S. at 414).

The limitation period instead continued to run and expired on February 6, 2009. Armey filed additional post-conviction motions (Docs. 88-3 at 200–14, 483–502, 655–72 and 88-4 at 6–49, 278–89) after the limitation period expired. Those motions did not toll the limitation period because "there [was] nothing left to toll." *Sibley*, 377 F.3d at 1204. Armey filed his federal petition on May 6, 2013. (Doc. 1 at 15) Consequently, even if the limitation period started to run on February 6, 2008, when Armey received the police report with his exculpatory statement, the claims in his federal petition based on the statement are still untimely.

**911 Call Claims**

Armey raises several additional claims based on evidence that he contends proves that he called 911 to ask police for help. In sub-claim B of Ground Six, he asserts that the prosecutor violated *Brady* by not disclosing to the defense evidence that proved that Armey called 911 for help and that proved that a manager at the hotel also called 911 to report that she was helping Armey escape from the drug dealer. (Doc. 62 at 17–18) In sub-claim B of Ground Two, he asserts that the prosecutor violated *Giglio* by informing the jury during trial that Armey never called police to help. (Doc. 62 at 10–11) In sub-claim B of Ground Three and in Ground Four, he asserts that trial counsel was ineffective for not demanding from the prosecutor a recording of Armey's 911 call and for not requesting from the custodian of records at the sheriff's office evidence of the 911 call. (Doc. 62 at 12–15)

Armey contends that he first learned about his 911 call and the 911 call by the hotel manager on January 9, 2009, when a custodian of records for the police department disclosed evidence that proved the 911 calls. (Doc. 62 at 18) He further contends that he received authenticated records proving his 911 call on February 2, 2008. (Doc. 62 at 14)

Like the exculpatory statement to police, even if Armey first received records proving his 911 call after trial, the prosecutor's failure to disclose to Armey before trial his own statement to the 911 operator does not violate *Brady*. *Boyd*, 697 F.3d at 1335. In his sworn Section 2254 petition, Armey confirms that he knew about the 911 call and told trial counsel about the 911 call before trial: "Prior to trial, [Armey] informed defense counsel [ ] that a written statement was given . . . . Additionally, defense counsel was informed that a '911' call was placed (to H.C.S.O.) for help." (Doc. 62 at 12) Also, at trial, Armey testified that he called police an hour after he ran into the drug dealer at the hotel (Doc. 88-2 at 280–81):

| | |
|---|---|
| [Prosecutor:] | And then you tell us about the day you walked out of the hotel room and you walked right into the drug lord, right? |
| [Armey:] | Yes, sir. |
| [Prosecutor:] | You run? |
| [Armey:] | Sure. |
| [Prosecutor:] | Because you're afraid for your life, scared for your life? |
| [Armey:] | Sure. |
| [Prosecutor:] | Because the dope man, the drug lords they're all trying to kill you? |
| [Armey:] | Correct. |
| [Prosecutor:] | But again, you don't call the police, do you? |
| [Armey:] | That day, yes sir, I did. |
| [Prosecutor:] | You did call the police that day? |
| [Armey:] | Yes, sir. |
| [Prosecutor:] | So you called immediately after you walked into the drug lord? |
| [Armey:] | No, I was involved in trying to get away from him at that time. I called them an hour later. |

Under Section 2244(d)(1)(B), because Armey could not demonstrate that the prosecutor violated *Brady* by not disclosing his 911 call and that the *Brady* violation impeded him from timely raising the above claims based on his 911 call in his federal petition, the limitation period did not begin to run when Armey received records proving his 911 call. *Johnson*, 513 F.3d at 1331–32. Because Armey acknowledges that he knew about his 911

call before trial, Section 2244(d)(1)(D) based on newly discovered evidence does not provide Armey relief either. *Cole*, 768 F.3d at 1157.[7]

Even if the limitation period began to run on January 9, 2009, when he received evidence that proved both his 911 call and the hotel manager's 911 call, his petition is still untimely. On April 1, 2008, Armey filed the post-conviction motion (Doc. 88-3 at 200–14), which the post-conviction court dismissed as not properly sworn. (Doc. 88-3 at 338–39) Armey filed a properly sworn amended motion (Doc. 88-3 at 346–74), which the post-conviction court denied as untimely on August 17, 2010. (Doc. 88-3 at 472–73) Because the post-conviction court denied the amended motion as untimely, the amended motion was not "properly filed" under Section 2244(d)(2) and did not toll the limitation period. *Allen*, 552 U.S. at 4.

The limitation period instead continued to run and expired on January 11, 2010. Armey filed additional post-conviction motions (Docs. 88-3 at 200–14, 483–502, 655–72 and 88-4 at 6–49, 278–89) after the limitation period expired. Those motions did not toll the limitation period because "there [was] nothing left to toll." *Sibley*, 377 F.3d at 1204. Armey filed his federal petition on May 6, 2013. (Doc. 1 at 15) Consequently, even if the limitation period started to run on January 9, 2009, when Armey received evidence that proved the 911 calls, the claims in his federal petition based on the 911 calls are still untimely.

---

[7] Records attached to Armey's successive post-conviction motions show that Armey called 911 and the hotel manager gave the 911 operator directions on August 2, 1999. (Doc. 88-3 at 461, 588) At trial, evidence proved that Armey stole the car and the truck almost two weeks later on August 15, 1999. (Doc. 88-2 at 100–02, 115–17, 120–23, 138–43)

### Documents Related to Work as Confidential Informant

In Ground Seven, Armey asserts that the prosecutor violated *Brady* by not disclosing three documents that proved that "[he] was to be paid $1,000.00 a kilogram to work in an undercover 'posse comitatus' position to provide services and information to [the sheriff's office] Organized Crime Drug Enforcement Taskforce [ ]." (Doc. 62 at 19–20) In his Section 2254 petition, Armey does not state when he discovered these records. He states that the documents are dated August 3, 1999. (Doc. 62 at 20)

Attached to his second post-conviction motion, which he filed on September 11, 2003, are three documents related to Armey's work as a confidential informant. (Doc. 88-3 at 94–96) The first document is titled "Organized Crime Source Form" and states that Armey was "activated" as a confidential source on August 3, 1999. (Doc. 88-3 at 94) The second document is titled "Criminal Investigation Source Sheet," does not contain a date, and states that Armey worked as confidential informant for money. (Doc. 88-3 at 95) The third document is a receipt for payment to Armey as a confidential informant, including payment for a hotel, dated August 2, 1999. (Doc. 88-3 at 96) The crimes occurred on August 15, 1999. (Doc. 88-2 at 18–20) In his post-conviction motion, Armey asserted that these newly discovered documents prove that the prosecutor presented false testimony by a detective at trial concerning his work as a confidential informant. (Doc. 88-3 at 80)

Like the exculpatory statement in police report and the evidence of the 911 calls, even if Armey received records before September 11, 2003 which proved that Armey worked as a confidential informant, Armey knew before trial that he had worked as a confidential informant and knew how much police had paid him for his work. At trial, police officers and Armey both testified that Armey worked as a confidential informant at the time of the

crimes. (Doc. 88-2 at 233–35, 245–50, 255–60) The prosecutor's failure to disclose to Armey the documents which contained information that Armey already knew did not violate *Brady*. *Felker v. Thomas*, 52 F.3d 907, 910 (11th Cir. 1995) ("We have held numerous times that there is no suppression, and thus no *Brady* violation, if either the defendant or his attorney knows before trial of the allegedly exculpatory information."). *Jennings v. McDonough*, 490 F.3d 1230, 1238 (11th Cir. 2007) ("[W]e adopted the rule that, '[w]here defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged *Brady* material, there is no suppression by the government.'") (citation omitted).

Under Section 2244(d)(1)(B), because Armey could not demonstrate that the prosecutor violated *Brady* by not disclosing the documents related to his work as a confidential informant and that the *Brady* violation impeded him from timely raising in his federal petition the above claim in Ground Seven based on those documents, the limitation period did not begin to run when Armey received those documents. *Johnson*, 513 F.3d at 1331–32. Because Armey knew that he had worked as a confidential informant and knew how much police had paid him for his work, Section 2244(d)(1)(D) based on newly discovered evidence does not provide Armey relief either. *Cole*, 768 F.3d at 1157.

Lastly, even assuming the limitation period began to run on September 11, 2003[8], when he filed his second post-conviction motion with the documents related to his work as a confidential informant, his petition is untimely. As explained above, Armey untimely filed the second post-conviction motion and, therefore, the motion did not toll the limitation

---

[8] Armey very likely discovered the documents weeks or months before his filed his second post-conviction motion. However, since Armey does not state when he discovered the documents, the Court may presume that, at the very latest, he knew about the documents when he attached them to his motion filed in state court.

period. *Jones*, 906 F.3d at 1350. The limitation period instead continued to run and expired on September 13, 2004. Armey filed additional post-conviction motions (Docs. 88-3 at 200–14, 483–502, 655–72 and 88-4 at 6–49, 278–89) after the limitation period expired. Those motions did not toll the limitation period because "there [was] nothing left to toll." *Sibley*, 377 F.3d at 1204. Armey filed his federal petition on May 6, 2013. (Doc. 1 at 15) Consequently, even if the limitation period started to run on September 11, 2003, when at the very latest Armey learned about the documents related his work as a confidential informant, the claim in Ground Seven of his federal petition based on those documents is still untimely.

### Mental Health Records

In Ground Eight, Armey asserts that trial counsel was ineffective for not investigating Armey's mental health and for not presenting an insanity defense at trial. (Doc. 62 at 22–24)[9] He contends that, in November of 2010, he discovered new evidence supporting this claim in the prosecutor's file. (Doc. 62 at 23) He does not identify what evidence he discovered but states that he filed a successive post-conviction motion supported by the new evidence and that the state appellate court affirmed the denial of the motion on March 20, 2013. (Doc. 62 at 23)

This Court reviewed the post-conviction court's order that the state appellate court affirmed on March 20, 2013 (Doc. 88-3 at 608–16) and Armey's motion which the order denied. (Doc. 88-3 at 483–502) Neither the motion nor the order addresses a claim asserting

---

[9] Armey asserts that post-conviction counsel was ineffective for not investigating his mental health. (Doc. 62 at 22) An ineffective assistance of post-conviction counsel claim is not cognizable on federal habeas. 28 U.S.C. § 2254(i). Also, ineffective assistance of post-conviction counsel does not excuse a time bar under AEDPA. *Lambrix v. Sec'y, Fla. Dep't Corrs.*, 756 F.3d 1246, 1262 (11th Cir. 2014).

that trial counsel was ineffective for not investigating Armey's mental health. Because Armey does not identify what new evidence that he discovered and when he discovered that new evidence, he fails to carry his burden and demonstrate that the limitation period began to run on a later date under subsection (d)(1)(B) or subsection (d)(1)(D) of Section 2244. *See Akins v. United States*, 204 F.3d 1086, 1090 (11th Cir. 2000).

Even if the limitation period began to run on November of 2010, when he discovered the new evidence supporting an insanity defense, his petition is untimely. On January 10, 2011, Armey filed a successive motion for post-conviction relief. (Doc. 88-3 at 483–502) The post-conviction court denied the motion as untimely. (Doc. 88-3 at 608–16) Because the post-conviction court denied the motion as untimely, the motion was not "properly filed" under Section 2244(d)(2) and did not toll the limitation period. *Allen*, 552 U.S. at 7. The limitation period instead continued to run and expired in November of 2011. Armey filed additional post-conviction motions (Docs. 88-3 at 655–72 and 88-4 at 6–49, 278–89) after the limitation period expired. Those motions did not toll the limitation period because "there [was] nothing left to toll." *Sibley*, 377 F.3d at 1204.

Even so, Armey filed his initial federal petition on May 6, 2013, and an amended petition on April 8, 2014, but did not raise the claim in Ground Eight in either petition. (Docs. 1 and 20) Armey first raised the claim in Ground Eight in his second amended petition, which he filed on November 20, 2017. (Doc. 62 at 22–24, 30) Because the claim in Ground Eight in the second amended petition and a claim raised in an earlier petition are not "tied to a common core of operative facts," the claim in Ground Eight does not relate back to an earlier petition for limitation purposes. *Mayle*, 545 U.S. at 664. *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). Neither the initial petition nor the amended

petition tolled the limitation period. *Duncan v. Walker*, 533 U.S. 167 (2001). Consequently, even if the limitation period started to run in November of 2010, Armey first raised the claim in Ground Eight on November 20, 2017, no properly filed post-conviction motion tolled the limitation period, and the claim is untimely.[10]

### Section 119.07 — Use of Public Records on Post-Conviction

Armey asserts that Section 119.07, Florida Statutes, impeded him from timely filing his claims in his federal petition by barring him from relying on evidence obtained from a public records request to raise the claims. (Doc. 85 at 3) The statute requires a custodian of a public record to permit any person to inspect the public record. § 119.07(1)(a), Fla. Stat. The custodian must promptly acknowledge the request, must respond in good faith, and may assert that an exemption applies to a record requested. § 119.07(1)(c), (d), (e), (f), Fla. Stat. If the custodian asserts that an exemption applies to a record requested, the person who requested the document may file a civil action to enforce his right to inspect the record. *Claudio v. Clerk of Cir. Ct., Volusia Cty.*, 128 So. 3d 830, 832 (Fla. 5th DCA 2013).

Section 119.07(8) prohibits an inmate from using the statute as an excuse for failing to timely file a post-conviction motion:

> The provisions of this section are not intended to expand or limit the provisions of Rule 3.220, Florida Rules of Criminal Procedure, regarding the right and extent of discovery by the state or by a defendant in a criminal prosecution or in collateral postconviction proceedings. This section may not be used by any inmate as the basis for failing to timely litigate any postconviction action.

---

[10] Armey also asserts that the claim in Ground Eight of his federal petition relates back to a claim in a state post-conviction motion that he filed before the limitation period expired. (Doc. 85 at 3–4) As explained above, a claim in a federal petition does not relate back under Rule 15(c) to a claim in a state post-conviction motion. *Mayle*, 545 U.S. at 664.

Section 119.07, Florida Statutes, did not bar Armey from using evidence that he obtained from a public records request to raise his post-conviction claims. Armey could have used evidence discovered in the public records after the time to file a motion under Rule 3.850 expired only if he could demonstrate that the facts that he discovered in the public records "were unknown to [him] or [his] attorney and could not have been ascertained by the exercise of due diligence," and that "the claims [were] made within two years of the time the new facts were or could have been discovered with the exercise of due diligence." Fla. R. Crim. P. 3.850(b)(1). Because he failed to do so, Section 119.07 did not violate the federal constitution or federal law and did not impede Armey from timely filing his claims in his federal petition. *Johnson*, 513 F.3d at 1331–32. *See also Farmer v. State*, 927 So. 2d 1075, 1076 (Fla. 2d DCA 2006).

### Equitable Tolling

Armey asserts that the limitation period equitably tolled when the clerk of the state appellate court failed to timely inform him in 2013 that the state appellate court had affirmed an order denying his successive post-conviction motion (Doc. 71 at 7):

> Immediately following the March 20, 2013, affirmance, [Armey] was transported to the Hillsborough County Jail for an evidentiary hearing in case number 98-CF-003531 (which was believe[d] to be consolidated into [the] case at bar *nunc pro tunc* on Jan[uary] 9, 2015). At [the] time of transfer, [Armey] notified James Birkhold (Clerk of the Second District Court of Appeals) of the new address change, and advised that once the mandate was issued on the March 20, 2013 denial, it should be mailed to the new address because there would only be 14 calendar days remaining on [Armey's] AEDPA deadline to file a Section 2254 federal habeas corpus [petition] and any mailing to the old address would create an atmosphere for an "untimely" filing — Mr. Birkhold mailed the mandate to the old address (contrary to any logical reasoning) and the mandate did not reach [Armey] until the federal statute of limitations had expired, prompting a rather scathing letter from [Armey] . . . .

Equitable tolling applies to the one-year statute of limitation for a Section 2254 petition. *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner must show that "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace*, 544 U.S. at 418). The petitioner must demonstrate "a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011).

As explained above, subsection (d)(1)(B) and subsection (d)(1)(D) of Section 2244 do not apply, and the limitation period expired on December 9, 2004. Even if the subsections did apply, the limitation period expired, at the very latest, in November of 2011. Even if the clerk of the state appellate court failed to timely deliver the mandate on post-conviction appeal to Armey in 2013, that failure did not prevent him from timely filing his petition. Because Armey fails to demonstrate a "causal connection" between the belated delivery of the mandate in 2013 and the untimely filed petition, equitable tolling does not apply. *San Martin*, 633 F.3d at 1270–71. *Lawrence v. Florida*, 421 F.3d 1221, 1226–27 (11th Cir. 2005).

**Actual Innocence**

Armey asserts that actual innocence excuses the time bar. (Doc. 89 at 12) He contends that a psychiatric report proves that he suffered from mental illness at the time of the crimes and that no reasonable juror would have convicted him if trial counsel had presented an insanity defense based on that evidence at trial. (Doc. 89 at 12–13)

Armey attached to his successive post-conviction motion a psychiatric report by a doctor with the Iowa Medical and Classification Center of the Iowa Department of

Corrections. (Doc. 88-4 at 62–68) The report, which was drafted on July 15, 1993, indicates that a doctor diagnosed Armey with bipolar disorder, alcohol dependence, polysubstance abuse, antisocial personality disorder, and psychotic disorder. (Doc. 88-4 at 62–63) The report also indicates that testing showed "a positive hereditary factor for narcolepsy" and that Armey suffered from severe mood swings and hallucinations (Doc. 88-4 at 63, 67–68):

> Lastly, we must not leave out the mood swings or the narcolepsy. Mr. Armey travels through some of the quickest and most severe mood swings I have ever witnessed. This is consistent with a bipolar diagnosis and the patient will need constant medications to control this behavior. This writer as well as my staff have witnessed Mr. Armey in stages of what I will refer to as "hypnagogic hallucinations." These hallucinations are most commonly found to occur in the sleep environment. However, as the patient ages, these hallucinations seem to occur more often in situations other than the sleep environment and are extremely hard to control with medications. It is important to know that no two people seem to experience narcolepsy the same way. In fact, it can vary greatly at different periods in one's life.

> . . .

> This patient is an individual who without continued medications will not be able to bide by the dictates of social living. One of the symptoms Mr. Armey suffers is called "hypnagogic hallucinations." In short, untreated Mr. Armey hallucinates people trying to kill him. This symptom will only get worse as Mr. Armey ages. Untreated he may someday hurt someone, thinking they are about to hurt him. Eventually this symptom will force Mr. Armey into seclusion, being afraid to make any sort of public appearance for fear that people will harm him. Only the future will tell.

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass . . . [the] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the

new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 569 U.S. at 399.

The Eleventh Circuit declined to decide "whether *Schlup* permits a claim of actual innocence based on 'new reliable' evidence of a complete affirmative defense that renders the conduct of conviction wholly noncriminal and requires acquittal." *Rozzelle v. Sec'y, Fla. Dep't Corrs.*, 672 F.3d 1000, 1015 (11th Cir. 2012). Even if *Schlup* does, Armey fails to demonstrate that actual innocence excuses the time bar.

First, evidence of Armey's mental illness is not "new" evidence because Armey knew at the time of trial that he had received treatment for mental illness in Iowa. The Iowa report is dated July 15, 1993, and Armey's trial occurred on May 24, 2000. (Doc. 88-2 at 24) The report states: "When asked why he had been referred to this facility, Mr. Armey indicated, 'For psychiatric evaluation because you people think I'm crazy just because people are trying to kill me.'" (Doc. 88-4 at 64) The report further states that Armey successfully participated in programs at the facility. (Doc. 88-4 at 66–67) Armey could have informed trial counsel about this evaluation and treatment for mental illness, and trial counsel could have subpoenaed the report and attempted to develop an insanity defense for trial. *Rozzelle*, 672 F.3d at 1018 n.21.

Second, under Florida law at the time of Armey's offenses[11], "[t]he test for insanity [was] whether, at the time of the offense, the defendant 'had a mental infirmity, disease or defect and as a result, did not know what he was doing or did not know that what he was doing was wrong.'" *Gryczan v. State*, 726 So. 2d 345, 346 (Fla. 4th DCA 1999) (quoting *State v. McMahon*, 485 So. 2d 884 (Fla. 2d DCA 1986)). "A criminal defendant [was] presumed sane; however, once he present[ed] evidence as to insanity, the burden [was] on the state to prove sanity beyond a reasonable doubt." *Gryczan*, 726 So. 2d at 346 (citing *Yohn v. State*, 476 So. 2d 123 (Fla. 1985)). The doctor in Iowa drafted the report in 1993, six years before the offenses occurred in 1999. (Doc. 88-2 at 18–20) The doctor does not opine that Armey suffered from mental illness at the time of the offenses. The report only suggests that Armey could suffer from hallucinations and unfounded fears that someone is trying to kill him at some unknown time in the future. Further, the report does not state that the hallucinations and unfounded fears either prevented Armey from knowing what he was doing or prevented him from knowing what he was doing was wrong. Because the stale report does not conclusively support an insanity defense, the report is not new evidence that demonstrates actual innocence. *House*, 547 U.S. at 538 ("[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case.") (citation omitted).

At trial, Armey admitted under oath that he stole both the car and truck, pushed the passenger out of the car before driving off, and shoved the female's hand out of the truck before driving off. (Doc. 88-2 at 265–69) He testified that, when he committed the crimes,

---

[11] In 2000, the Florida legislature enacted Section 775.027, Florida Statutes, which codified the insanity defense. Because Armey committed his offenses on August 15, 1999 (Doc. 88-2 at 18–20), the statute does not apply. *See Rodriguez v. State*, 172 So. 3d 540, 543 (Fla. 5th DCA 2015).

he had not eaten for eight days and slept only periodically. (Doc. 88-2 at 264) On cross-examination, Armey further admitted that, at the time of the crimes, he "had been on a crack binge for eight days" and "may not have had all [his] senses the days leading up to this incident." (Doc. 88-2 at 274)

*Gray v. State*, 731 So. 2d 816, 818 (Fla. 5th DCA 1999) (italics in original)[12], explains that Florida law does not recognize insanity caused by voluntary intoxication:

> Although the expert applied the *M'Naghten* standard and found that Gray did not know what he was doing or the consequences of what he was doing and did not know right from wrong, it was *because of the drugs voluntarily taken by him on that evening*. Hence, the defense seems to be asserting a voluntary insanity defense. The problem is that Florida does not recognize such a defense.[1] Just imagine how such a defense would affect driving under the influence related offenses. "I'm sorry they're all dead, but I was too drunk to know it was wrong to drive."
>
> > [1] Florida does recognize a defense of insanity super-induced by the long and continued use of intoxicants so as to produce "a fixed and settled frenzy or insanity either permanent or intermittent." *See Cirack v. State*, 201 So. 2d 706 (Fla. 1967). That was not the testimony in this case. Here, the defense expert testified, at most, to serial voluntary intoxication.

The report states that Armey's narcolepsy could cause hallucinations and an unfounded belief that someone was trying to kill him. The eight-day crack cocaine binge and the lack of food at the time of the offenses could also have caused the hallucinations and therefore significantly undercut the probative value of the report. Consequently, Armey

---

[12] On October 1, 1999, the Florida legislature enacted Section 775.051, which prohibits admission of evidence of voluntary intoxication of illegal drugs to prove insanity. Because Armey committed his offenses on August 15, 1999 (Doc. 88-2 at 18–20), the statute does not apply.

does not demonstrate "that more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.

Lastly, Armey argues that the report supported an insanity defense based on hallucinations. (Doc. 89 at 12) *Cruse v. State*, 588 So. 2d 983, 989 (Fla. 1991), explains that, at the time of Armey's offenses[13], Florida recognized the defense of insanity by reason of hallucinations or delusions:

> A person may be legally sane in accordance with the instructions previously given and still yet, by reason of mental infirmity, have hallucinations or delusions which cause him to honestly believe to be facts things which are not true or real. The guilt of a person suffering from such hallucinations or delusions is to be determined just as though the hallucinations or delusions were actual facts. If the act of the defendant would have been lawful had the hallucinations or delusions been the actual facts, the defendant is not guilty of the crime.

Because Armey's eight-day crack cocaine binge and lack of food could have caused his hallucinations, both would also significantly undercut his defense of insanity by reason of hallucinations. Also, even if the report convincingly proved that, at the time of the offenses, Armey suffered from hallucinations which led him to honestly believe that the drug dealer was trying to kill him, Armey could not have lawfully taken the car and the truck by force based on the defense of necessity. To prove the defense of necessity, Armey had to demonstrate that he "did not intentionally or recklessly place himself in a situation in which it would be probable that he would be forced to choose the criminal conduct." *Brooks v. State*, 122 So. 3d 418, 422 (Fla. 2d DCA 2013) (quoting *Reed v. State*, 114 So. 3d

---

[13] This defense of insanity by reason of hallucinations applies only to an offense committed before June 19, 2000, when the Florida legislature enacted Section 775.027. *Rodriguez*, 172 So. 3d at 540. Because Armey committed his offenses on August 15, 1999 (Doc. 88-2 at 18–20), Armey could have attempted to assert the defense.

969, 972 n.5 (Fla. 5th DCA 2012)). By abusing crack cocaine for eight days without food, Armey recklessly placed himself in a position that would lead him to suffer from hallucinations and honestly believe that someone was trying to kill him. Because the crack cocaine binge and lack of food would also undercut the defense of necessity, Armey could not demonstrate that report convincingly proves his actual innocence. *Kuenzel v. Comm'r, Ala. Dep't Corrs.*, 690 F.3d 1311, 1318 (11th Cir. 2012) ("While the 'new evidence' Petitioner has offered might have strengthened Petitioner's defense if presented at trial, Petitioner has not offered sufficient 'new evidence' of the powerful kind that would individually or collectively 'show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'") (quoting *Schlup*, 513 U.S. at 327).

Accordingly, it is **ORDERED** that Armey's second amended petition (Doc. 62) is **DISMISSED** as time barred. The Clerk is **DIRECTED** to enter a judgment against Armey and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND
### LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Armey neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on September 23, 2022.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE